

# NUMBER 13-21-00264-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE OLD REPUBLIC INSURANCE COMPANY

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Tijerina[1]**

Relator Old Republic Insurance Company (Old Republic) has filed a petition for writ of mandamus through which it asserts that: (1) the trial court abused its discretion by denying Old Republic's motions to sever and abate extracontractual claims from a contract claim for policy benefits; (2) the trial court abused its discretion in permitting discovery on extracontractual claims, given that those claims should have been severed

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

and abated from the contract claim and because the scope of discovery was improper; and (3) an appeal after trial is not an adequate remedy for the trial court's abuses of discretion.[2] We conditionally grant the petition for writ of mandamus.

## I.    BACKGROUND

The following sequence of events is derived from the original petition filed by Uhr Real Estate, Inc. (Uhr) against Old Republic in the underlying case. According to the petition, David and Valerie Fallas owned a home in Rockport, Texas, which was damaged in 2017 by Hurricane Harvey. The homeowners contracted with Uhr to repair the damage and make additional improvements to the property. Uhr subcontracted with Williams Insulation Company, Inc. (Williams) to install insulation at the property. The contract between Uhr and Williams required Williams to designate Uhr as an additional insured on Williams's general liability insurance policy with Old Republic. According to Uhr's petition, Williams did so.

The repairs and improvements at the property were completed; however, the homeowners subsequently telephoned Mark Uhr, the owner of Uhr, to investigate a swollen bathroom door. Mark investigated and concluded through visual inspection and thermal imaging that the insulation had not been correctly installed, causing excessive moisture and visible mold in several locations throughout the property. The homeowners requested Uhr to remediate and repair, and Uhr made some efforts to minimize the homeowners' damages. Uhr notified Williams of the problems and suspected causation,

---

[2] This original proceeding arises from trial court cause number A-20-0068-CV-C in the 343rd District Court of Aransas County, Texas, and the respondent is the Honorable Janna Whatley. *See id.* R. 52.2.

2

and an adjuster from Old Republic and an additional inspector examined the property. Williams made some repairs at the home but did not assume responsibility for the water infiltration, mold, and related damages. Ultimately, the homeowners made a claim against Uhr, which Uhr presented to Old Republic. Old Republic denied that Uhr was an additional insured and denied any coverage under its insurance policy.

Uhr thus filed suit against Old Republic for breach of contract and unfair insurance practices.[3] Uhr alleged that it was an additional insured under the insurance policy and that Old Republic had breached its duties under the contract "by refusing to cover the owners' claims against UHR" and that Old Republic "failed to step forward and manage the claim of the owners to minimize the damages owed by UHR and generally denied that UHR is an Additional Insured under the policy in question." Uhr alleged that Old Republic had violated §§ 541 and 542 of the Texas Insurance Code by:

a. committing unfair settlement practices as such terms are defined for purposes of § 17.46(b) of the Texas Business and Commerce Code, Texas Deceptive Trade Practices Act (DTPA);

b. misrepresenting to UHR a material fact or policy provision, relating to the coverage at issue, i.e.[,] that UHR was not an Additional Insured under Williams' OLD REPUBLIC policy;

c. falling to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which OLD REPUBLIC's liability had become reasonably clear;

d. failing to provide promptly to UHR a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for OLD REPUBLIC's denial of UHR's claims;

e. failing within a reasonable time to (1) affirm or deny coverage of

---

[3] According to the petition for writ of mandamus, the homeowners filed suit against Williams that same day. The homeowners had assigned their claims against Williams to Rockport Entities, Inc., an entity owned by Mark Uhr

UHR's claim to UHR, or (2)·submit a reservation of rights to UHR;

f.      refusing, failing[,] or unreasonably delaying an offer of settlement under UHR's first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be allowed by the policy;

g.      refusing to pay a claim without conducting a reasonable investigation with respect to the claims;

h.      making a material misstatement of the law, i.e.[,] that since no suit against UHR has been filed, UHR is not an Additional Insured under OLD REPUBLIC's policy; and

i.      failing to affirm or deny coverage within a reasonable period of time.

*See* TEX. INS. CODE ANN. §§ 541.001–.454 (governing unfair methods of competition and unfair or deceptive acts or practices); *id.* §§ 542.001–.302 (governing the processing and settlement of claims).

On June 2, 2021, Uhr served a notice of intention to take the oral deposition of a representative of Old Republic, identifying twenty-one topics for the deposition and including a subpoena duces tecum requiring the production of ten different categories of documents.

On June 7, 2021, Old Republic filed a motion to sever and abate Uhr's extracontractual claims from its breach of contract claims. Old Republic asserted that Uhr's contractual claims and extracontractual claims were independent and that an insured cannot prevail on extracontractual claims without first showing that the insurer breached the contract. It asserted that it would lose "substantial rights" without severing the extracontractual claims from the breach of contract claims. Old Republic further argued that abatement was "necessary because the scope of permissible discovery

4

differs in contract and extracontractual claims, and without abatement, the parties will be required to conduct discovery on claims that may be disposed of in a previous trial." Old Republic supported its motion with the following exhibits as identified therein:

A.    September 19, 2019, Settlement Demand from the Fallases and Uhr to Williams[,]

B.    September 10, 2019, Correspondence from counsel for the Fallases and Uhr to Old Republic regarding joint representation[,]

C.    December 10, 2019, demand letter from the Fallases and Uhr to Old Republic[,]

D.    Old Republic Insurance Policy (Note: Filed under separate motion seeking confidentiality protection)[,]

E.    December 23, 2019, Denial Letter in response to demand[,]

F.    February 25, 2020, assignment to Rockport Properties[, and]

G.    Offer to settle breach of contract claim, and rejection in response (redacted)[.]

That same day, Old Republic also filed a motion to quash and for protective order regarding Uhr's notice of intention to take the oral deposition of Old Republic's corporate representative. Old Republic alleged that the notice encompassed "matters related to the extracontractual claims and unrelated third-party claims." Old Republic sought protection from the deposition notice "given the need for severance and abatement of the extracontractual claim[s]."

On or about July 13, 2021, Uhr filed a response to Old Republic's motion to sever and abate. Uhr objected to the documentation attached to Old Republic's motion on various grounds, including an assertion that some lacked "any evidentiary foundation," or that the documentation "constituted hearsay if offered for the truth of the matters stated

5

and [was] irrelevant if not." Uhr also objected to the "alleged" insurance policy "because it [had] not been authenticated or shown to be applicable to the claims in question." Uhr alleged that Old Republic's factual background was "often erroneous and mostly misleading." Uhr argued that there had been "virtually no discovery done" in the case, and "[n]o one knows the facts." Uhr thus asserted that there was no evidence that its claims for breach of contract were essentially different from its statutory bad faith claims. Uhr also alleged that it should be allowed to depose Old Republic's corporate representative.

On July 14, 2021, the trial court held a non-evidentiary hearing on Old Republic's motions to sever and abate and to quash the deposition. At the hearing, while contemplating its ruling, the trial court explained that it would proceed with discovery even if it were to grant severance and abatement because otherwise, it "would be more expensive and prejudicial to everybody, not having the discovery combined." That same day, the trial court denied Old Republic's motion to quash and motion for protective order. The following day, the trial court denied Old Republic's motion to sever and abate.

This original proceeding ensued. This Court requested that Uhr, or any others whose interest would be directly affected by the relief sought, file a response to the petition for writ of mandamus. Uhr filed a response in opposition to Old Republic's claims. The parties further favored the Court with additional briefing: Old Republic filed a reply to Uhr's response, and Uhr filed a sur-reply thereto.[4]

---

[4] Uhr filed a first amended original petition after Old Republic instituted this original proceeding. The amended pleading incorporates the causes of action alleged against Old Republic in Uhr's original petition, breach of contract and statutory violations, and includes additional claims for conspiracy and fraud. Uhr alleged that Old Republic "either misrepresented that the Williams Insulation policy provided the general

## II. STANDARD OF REVIEW

"Mandamus relief is an extraordinary remedy requiring the relator to show that (1) the trial court clearly abused its discretion and (2) the relator lacks an adequate remedy on appeal." *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36, 138 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it reaches a decision that is so arbitrary and unreasonable as to constitute a clear and prejudicial error of law or if it fails to correctly analyze or apply the law. *See In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 839–40. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d at 25; *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. Appeal is an inadequate remedy to address the trial court's failure to sever extracontractual claims from contractual claims and in such cases, mandamus relief is appropriate. *See, e.g.*, *In re State Farm Mut. Auto. Ins.*, 629 S.W.3d 866, 878 & n.7 (Tex. 2021) (orig. proceeding) (collecting cases).

---

liability coverage required under the UHR-Williams Insulation contract[] or failed to advise UHR that such coverage was changed after the contract was made." Uhr further alleged that Old Republic and Williams "conspired to misrepresent the coverage provided to Additional Insureds or to change the coverage without notifying UHR after the contract was made." It is a fundamental tenet of mandamus practice that an appellate court reviews the actions of the trial court based on the record before the court at the time it makes its ruling. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex. 1990) (orig. proceeding); *Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding) (per curiam); *Hudson v. Aceves*, 516 S.W.3d 529, 539–40 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (combined app. & orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). Our review here is based on the record that was before the trial court at the time of its ruling.

### III.   SEVERANCE AND ABATEMENT

By its first issue, Old Republic asserts that the trial court abused its discretion by denying Old Republic's motion to sever and abate Uhr's extracontractual claims from Uhr's breach of contract claim for policy benefits. In contrast, Uhr asserts that its contractual claims are interwoven with its statutory claims and involve the same facts and issues, and thus severance is inappropriate. Uhr further asserts that in the absence of findings of fact and conclusions of law, we must presume that the trial court made all findings necessary to support its ruling, and that ruling must be upheld on any legal theory that finds support in the evidence. Finally, Uhr assails the settlement offer made by Old Republic as "additional evidence of the bad faith practices" in which Old Republic has engaged. Uhr argues that the amount of the settlement offer, and Old Republic's failure to continue negotiations after Uhr made a counteroffer, indicate that Old Republic "never intended to negotiate in good faith" and was simply "seeking a legal loophole . . . in support of its planned Motion to Sever and Abate." Uhr also contends that Old Republic's argument and most of its authorities relate to uninsured or underinsured motorist claims, and those cases are legally dissimilar to the case at hand.

### A.   Severance

Texas Rule of Civil Procedure 41 governs severance. *See* TEX. R. CIV. P. 41. Rule 41 provides, in part, that "[a]ctions which have been improperly joined may be severed . . . on such terms as are just. Any claim against a party may be severed and proceeded with separately." *Id.* The Texas Supreme Court has held that

> A claim is properly severable if (1) the controversy involves more than one
> cause of action, (2) the severed claim is one that would be the proper

8

subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *see In re State*, 355 S.W.3d 611, 614 (Tex. 2011) (orig. proceeding); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007). "The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658; *see F.F.P. Operating Partners, L.P.*, 237 S.W.3d at 693. "Trial courts have broad discretion to sever claims, and a severance is improper only if the trial court abused its discretion in ordering the severance." *State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018); *see Guar. Fed. Sav. Bank*, 793 S.W.2d at 658; *F.F.P. Operating Partners, L.P.*, 237 S.W.3d at 693. Nevertheless, the trial court has a duty to order severance when "all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby." *Womack v. Berry*, 291 S.W.2d 677, 682–83 (Tex. 1956) (orig. proceeding); *see In re State Farm Mut. Auto. Ins.*, 629 S.W.3d at 877.

**B.      Contractual and Extracontractual Insurance Claims**

The Texas Supreme Court originally addressed the severance and abatement of contractual and extracontractual insurance claims in *Liberty National Fire Insurance Co. v. Akin.* 927 S.W.2d 627, 628–32 (Tex. 1996) (orig. proceeding). There, the trial court denied the insurer's motion to sever and adjudicate a breach of contract claim before proceeding to trial on a bad faith insurance claim in a homeowner's insurance property

9

damage case. *Id.* at 628. The supreme court concluded that there was no abuse of discretion. *Id.* In refusing to grant mandamus relief, the supreme court rejected "an inflexible rule that would deny the trial court all discretion and . . . require severance in every case, regardless of the likelihood of prejudice." *Id.* at 630; *see In re Allstate Tex. Lloyds*, 202 S.W.3d 895, 899 (Tex. App.—Corpus Christi–Edinburg 2006, orig. proceeding [mand. denied]) (denying mandamus relief regarding the severance of contractual and extracontractual claims based on the *Akin* standard). Ultimately, the supreme court concluded that the contractual and extracontractual claims were interwoven, that most of the evidence was admissible on both claims, and that any prejudicial effect of a unified trial could be ameliorated by appropriate limiting instructions. *Akin*, 927 S.W.2d at 628. However, the supreme court placed express limitations on its holding:

> A severance may nevertheless be necessary in some bad faith cases. A trial court will undoubtedly confront instances in which evidence admissible only on the bad faith claim would prejudice the insurer to such an extent that a fair trial on the contract claim would become unlikely. One example would be when the insurer has made a settlement offer on the disputed contract claim. As we have noted, some courts have concluded that the insurer would be unfairly prejudiced by having to defend the contract claim at the same time and before the same jury that would consider evidence that the insurer had offered to settle the entire dispute. While we concur with these decisions, we hasten to add that evidence of this sort simply does not exist in this case. In the absence of a settlement offer on the entire contract claim, or other compelling circumstances, severance is not required.

*Id.* at 630 (internal citations omitted); *see In re Miller*, 202 S.W.3d 922, 925–26 (Tex. App.—Tyler 2006, orig. proceeding); *In re Trinity Universal Ins.*, 64 S.W.3d 463, 468 (Tex. App.—Amarillo 2001, orig. proceeding [mand. denied]). Thus, the supreme court acknowledged that contractual and extracontractual claims are factually interwoven, yet

10

there are instances where severance would nonetheless be required. *See Akin*, 927 S.W.2d at 628–30. Following *Akin*, Texas courts have repeatedly held that a trial court abuses its discretion by denying a motion to sever and abate in a case against an insurer alleging a breach of contract and extracontractual theories when the insurer has made a settlement offer. *See, e.g.*, *In re Progressive Cnty. Mut. Ins.*, 622 S.W.3d 91, 98 (Tex. App.—San Antonio 2020, orig. proceeding); *In re Progressive Cnty. Mut. Ins.*, 439 S.W.3d 422, 426 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding); *In re Allstate Cnty. Mut. Ins.*, 447 S.W.3d 497, 503 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re Am. Nat. Cnty. Mut. Ins.*, 384 S.W.3d 429, 435–37 (Tex. App.—Austin 2012, orig. proceeding); *In re Hochheim Prairie Farm Mut. Ins. Ass'n*, 296 S.W.3d 907, 913 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding); *see also In re Germania Ins.*, No. 13-18-00102-CV, 2018 WL 1904911, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2018, orig. proceeding) (mem. op.).

The Texas Supreme Court more recently addressed the propriety of severing or bifurcating contractual causes of action and extracontractual causes in *In re State Farm Mutual Automobile Insurance Company*. *See* 629 S.W.3d at 870–78. In that case, the supreme court concluded that in the "unique context" of uninsured/underinsured motorist (UM/UIM) litigation, the "common bifurcation process makes sense for at least two reasons." *Id.* at 876. First, "bifurcation tends to preserve judicial resources" because the statutory claims might be rendered moot by a determination of non-liability, and the insurer should not have to undergo the expenses of litigating and conducting discovery on issues that might not be necessary. *Id.* Second, "bifurcation of trial is proper because

11

evidence of the insurer's settlement offer may be admissible in one phase of the trial but inadmissible in the other." *Id.*

## C. Findings of Fact and Conclusions of Law

Uhr argues that because the trial court made no findings of fact or conclusions of law, we must presume that the trial court made all findings necessary to support its ruling, and that ruling "must not be disturbed if it can be upheld on any legal theory that finds support in the evidence."

"When, as here, no findings of fact or conclusions of law are requested or filed, we imply all findings that are necessary to support the trial court's ruling and supported by the evidence." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re Stutsman*, 612 S.W.3d 695, 697 (Tex. App.—Texarkana 2020, orig. proceeding). The Texarkana Court of Appeals has explained the application of this principle in the context of severance as follows:

> The issue of whether a trial court should or should not grant a severance motion is ultimately a question of law. When considering whether to grant a severance motion, the trial court must generally accept the plaintiff's pleadings as true and then determine whether severance is appropriate . . . . If the trial court's decision to grant or deny a party's severance motion fell within the wide zone of reasonable agreement, the appellate court reviewing that decision within the context of a mandamus proceeding should not conclude the lower court abused its discretion. Given that the trial court must generally accept the plaintiff's pleadings as true, the only remaining dispute concerns the legal consequences stemming from those accepted-as-pleaded facts.

*In re Liu*, 290 S.W.3d 515, 520 (Tex. App.—Texarkana 2009, orig. proceeding) (internal citations omitted); *see In re Stutsman*, 612 S.W.3d at 697. We agree with Uhr's

12

contentions regarding our review and apply that standard here.

**D.      Analysis**

In this case, Uhr's extracontractual claims against Old Republic are dependent on the resolution of its contract claims. Stated otherwise, Uhr's alleged damages are not independent of its alleged right to receive policy benefits. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d at 874–75; *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499–500 (Tex. 2018). Further, Old Republic has made a settlement offer. When a settlement offer has been made, the parties have conflicting and competing interests in excluding and admitting evidence of the offer of settlement:

> Absent severance, an insurer is presented with a "Catch–22" in that its decision to admit or exclude evidence of a settlement offer jeopardizes the successful defense of the other claim. For instance, in defending against a contract claim, the insurer will insist on exercising its right to exclude evidence of a settlement offer to negate liability. Conversely, in defending against extra[]contractual claims, an insurer will insist on exercising its right to admit evidence of a settlement offer to negate liability. Thus, by having to defend against these two types of claims simultaneously and before the same jury absent severance, an insurer is prejudiced to such an extent that a fair trial is unlikely. Under such a scenario, the trial court has no choice but to sever in order to protect the fairness of the proceedings and the interests of the parties.

*In re State Farm Mut. Auto. Ins.*, 395 S.W.3d 229, 234 (Tex. App.—El Paso 2012, orig. proceeding) (internal citations omitted); *see In re Am. Nat. Cnty. Mut. Ins. Co.*, 384 S.W.3d at 434–35; *In re Allstate Ins. Co.*, 232 S.W.3d 340, 343 (Tex. App.—Tyler 2007, orig. proceeding); *see also In re St. Paul Surplus Lines Ins.*, No. 14-12-00443-CV, 2012 WL 2015796, at *2 (Tex. App.—Houston [14th Dist.] June 1, 2012, orig. proceeding) (mem. op.) (per curiam) ("This court repeatedly has held that extra[]contractual claims must be severed and abated when the insurer has made a settlement offer on the contract claim").

As noted previously, Uhr alleges that the settlement offer "was less than 2.7% of the value" of its breach of contract claims, was "made in bad faith" only after Uhr would not agree to severance and abatement, and Old Republic failed to continue in negotiations after making the original settlement offer. However, based on the record before us, there can be no dispute that Old Republic offered to settle Uhr's claim. Uhr cites no authority in support of its position that any of the foregoing alleged circumstances affect the determination regarding severance.

Finally, we note that Uhr alleges that the foregoing law is centered on UM/UIM litigation and is thus inapplicable to this case. We disagree. These general tenets apply to other insurance cases and not just cases involving UM/UIM litigation. *See Akin*, 927 S.W.2d at 628 (considering claims made under homeowner's insurance); *In re Tex. Farm Bureau Underwriters*, 374 S.W.3d 651, 654 (Tex. App.—Tyler 2012, orig. proceeding) (considering an insurance claim regarding a lawsuit for wrongful death); *In re Allstate Ins.*, 232 S.W.3d at 342 (considering an insurance claim regarding automobile damage caused by falling tree); *see also In re Progressive Cas. Ins.*, No. 12-20-00220-CV, 2020 WL 6065933, at *1 (Tex. App.—Tyler Oct. 14, 2020, orig. proceeding) (mem. op.) (considering a claim for property damage to the hull of a 2001 Skeeter ZX Bass Boat); *In re Century Sur. Co.*, No. 07-15-00386-CV, 2015 WL 6689532, at *1 (Tex. App.—Amarillo Nov. 2, 2015, orig. proceeding) (mem. op.) (considering a property damage claim following a hailstorm); *In re St. Paul Surplus Lines Ins.*, 2012 WL 2015796, at *1 (considering a claim for property damage and business income losses); *In re Maryland Cas. Co.*, No. 04-06-00413-CV, 2006 WL 2135052, at *1 (Tex. App.—San Antonio Aug. 2, 2006, orig.

14

proceeding) (mem. op.) (considering a claim for theft).

## E.  Conclusion

Based upon our review of the record, we hold that Uhr's extracontractual claims against Old Republic are severable. We also conclude that "all of the facts and circumstances of the case unquestionably require a [severance] to prevent manifest injustice, there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby . . . . " *See Womack*, 291 S.W.2d at 683; *In re Hochheim Prairie Farm. Mut. Ins. Ass'n*, 296 S.W.3d at 912; *In re Gen. Agents Ins. Co. of Am.*, 254 S.W.3d 670, 674 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Accordingly, we hold that the trial court abused its discretion in denying Old Republic's motion for severance and abatement. We sustain Old Republic's first issue.

## IV.  DISCOVERY

In its second issue, Old Republic asserts that the trial court abused its discretion by permitting discovery on extracontractual issues because "the extracontractual issues should be severed and abated from the contract claim and because the requested discovery is improper." According to Old Republic, the trial court abused its discretion in allowing the deposition of its corporate representative to take place. In this regard, Old Republic alleges that "almost all" of the twenty-one topics in Uhr's deposition notice and "most" of the ten categories of documents requested by subpoena duces tecum are relevant or relate to Uhr's extracontractual claims. Old Republic alleges that "engaging in a deposition and requesting documents on the extracontractual claims before there has

15

been a finding of breach of contract will cause [an] unnecessary burden and discovery expense[s]." In contrast, Uhr alleges that the requested discovery is essential for both the contractual and extracontractual claims.

The Texas Supreme Court has instructed us that discovery "may not exceed the bounds of the claims at issue." *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 791 (Tex. 2021) (orig. proceeding). And "[a] plaintiff may not obtain discovery on an unasserted, abated, or unripe bad-faith claim under the guise of investigating a claim for benefits." *Id.* Thus, "inquiry into extracontractual matters such as the claims-handling process is improper before entitlement to benefits under the policy has been established." *Id.* As acknowledged by the supreme court, "the line between a proper inquiry for relevant information and an improper inquiry into the claims-handling process may be a fine one. *Id.*

Here, the deposition notice seeks testimony and documentation regarding, inter alia, Old Republic's investigation of the claims, its "defenses, if any," to Uhr's statutory causes of action, and its settlement efforts. We agree with Old Republic that the scope of the proposed deposition exceeds the bounds of the contract claims at issue. *See id.* Accordingly, we conclude that the trial court abused its discretion in denying Old Republic's motion to quash and motion for protective order. *See id.* Accordingly, we sustain Old Republic's second issue. In so ruling, we note that when the trial court considers the scope of discovery for the underlying contract case, the trial court should exercise discretion to differentiate between discovery appropriate to contractual claims and discovery encompassing extracontractual claims, and to impose any other necessary

16

and appropriate limitations as the case may require.[5]

## V.   APPELLATE REMEDY

In its third and final issue, Old Republic asserts that it lacks an adequate remedy by appeal. In its response to the petition for writ of mandamus, Uhr asserts that it "does not contest the assertion that, had error been committed, there would be no adequate remedy on appeal."

Examining the facts and circumstances of this case, we conclude that Old Republic lacks an adequate remedy by appeal regarding the trial court's ruling on severance and abatement. *See generally In re State Farm. Mut. Auto. In*s., 629 S.W.3d at 878 (collecting cases). Further Old Republic lacks an adequate remedy by appeal for the trial court's discovery ruling because the deposition as noticed exceeds the permissible scope of discovery as described above. *See In re USAA Gen. Indem. Co.*, 624 S.W.3d at 795. Accordingly, we sustain Old Republic's third and final issue.

## VI.   CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, the additional briefing, and the applicable law, is of the opinion that Old Republic has met its burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its order of July 14, 2021, denying Old Republic's motion to quash and motion for protective order, and its

---

[5] Old Republic also argued that the discovery sought by deposition was impermissible because it, inter alia, related to the lawsuit filed by the homeowners against Williams and implicated the party-agent communication privilege. Given our ruling that the trial court erred in allowing both extracontractual and contractual discovery, we need not address these additional arguments here. These matters are devoted to the discretion of the trial court in further proceedings.

17

order of July 15, 2021, denying Old Republic's motion to sever and abate, and to issue an order severing Uhr's extracontractual claims against Old Republic and abating the severed cause. We are confident that the trial court will act promptly in accordance with this opinion, and our writ will issue only if the trial court fails to comply.

JAIME TIJERINA
Justice

Delivered and filed on the
5th day of January, 2022.

18